03-1742CBS

## AFFIDAVIT

I, Aaron J. Arnfeld, having been duly sworn, hereby depose and state as follows:

1. I am a Special Agent of the United States Department of State's Diplomatic Security Service ("DSS"), and have been so employed since November 1999. Prior to my appointment within the Diplomatic Security Service, I was employed for nine months as a Special Agent with the Office of Inspector General, General Services Administration. As part of my official duties, I am assigned to investigate persons who have provided or included false information in passport applications and persons who have falsely made or altered passports and visas.

2. The information set forth in this affidavit is based upon my investigation, as well as information provided by other agents of the DSS, the Bureau of Immigration and Customs Enforcement ("ICE"), the Massachusetts State Police ("MSP"), the Shrewsbury Police Department and other law enforcement officials as set forth below. In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but only those facts that I believe are sufficient to establish probable cause in support of a

-1-

criminal complaint and arrest warrant charging REINALDO R. SILVA (A/K/A JOHN BROY) with the following crimes: fraud and related activity in connection with identification documents and information in violation of Title 18, United States Code, Section 1028; forgery or false use of a passport in violation of Title 18, United States Code, Section 1543; fraud and misuse of visas, permits and other documents in violation of Title 18, United States Code, Section 1546; and conspiracy to commit the aforementioned criminal acts, in violation of Title 18, United States Code, Section 371.

3. This affidavit is also made in support of a warrant to search a Compaq computer bearing serial number MX302B2666, and electronic media, specifically two (2) compact discs ("CDs") and twelve (12) diskettes (hereinafter collectively referred to as "Electronic media"), seized during a search conducted by DSS agents at 34B Shrewsbury Green Drive, Shrewsbury, Massachusetts on September 10, 2003. That search and seizure was made pursuant to consent given orally and in written form to DSS and ICE agents by REINALDO R. SILVA, also on September 10, 2003. A copy of the written consent is attached hereto at Tab 1. The

      aforementioned computer and electronic media are currently in the custody of DSS

4. I seek a search warrant for the aforementioned Compaq computer bearing serial number MX302B2666, including any and all of its hard drive(s), CD-ROM storage drives, DVD drives and computer tape drives, and the electronic media provided by REINALDO SILVA, as I believe there is sufficient probable cause to establish the presence of digital evidence within, in one or more computer file formats: text files, JPEG files, TIFF files[1], and other files, which may have been used to produce fraudulent identification documents, or otherwise constitute the fruits, instrumentalities and evidence of crimes in violation of 18 United States Code, Sections 1028, 1543 and/or 1546.

5. MSP Trooper William Bond has been investigating the issuance of fraudulent drivers' licenses at the Massachusetts Registry of Motor Vehicles ("RMV") office in Framingham, Massachusetts and other RMV branch offices for the past several years. Trooper Bond told me that he was aware of wide use of counterfeit United

---

[1] So-called JPEG and TIFF files are computer files used in the creation and storage of digital images, including photographs and graphics.

States visas, both Borroughs-style (ink stamped) and Machine Readable 2000-style with attached photograph, and foreign passports by Brazilian nationals in their attempts to obtain Massachusetts drivers' licenses. Other documents presented at the RMV have included counterfeit Form I-94s and fake Social Security denial letters.[2] These documents have enabled many Brazilians, who have either entered the United States illegally or have overstayed their B1/B2 visas, to successfully obtain Massachusetts driver's licenses.

6. Through source interviews, Trooper Bond has learned that REINALDO R. SILVA has provided many Brazilian nationals with false identity documents and has

---

[2] A Form I-94 is an entry/exit document provided by the Department Of Homeland Security, or its predecessor agency, the Immigration and Naturalization Service, to a non-immigrant alien when he or she enters the United States. The Form I-94 and associated visa must be presented together to show the alien's visa classification and specific date of entry into the United States. The non-immigrant alien must have in his or her possession both a non-immigrant visa and a Form I-94. A Social Security denial letter is a letter issued by the Social Security Administration to a non-immigrant alien which indicates that the alien is not eligible for work based upon a review of documents presented by the alien to the Social Security Administration. Because non-work eligibility status does not necessarily mean that an alien is ineligible to obtain a Massachusetts driver's license, the denial letter can be presented as part of a package of documents to the RMV in order to attempt to procure a license.

   directly assisted them in the application for and
   acquisition of Massachusetts drivers' licenses while
   using these fraudulent identity documents.

7. On September 10, 2003, REINALDO SILVA was
   administratively arrested by ICE special agents at his
   apartment located at 34B Shrewsbury Green Drive,
   Shrewsbury, Massachusetts. Subsequent to the arrest,
   REINALDO SILVA gave his consent (both orally and in
   written form) for ICE and DSS agents to search the
   apartment, the lease for which reflected REINALDO SILVA
   as the renter. During the search, three Brazilian
   passports of different individuals were discovered in a
   small box that was located inside the main hallway
   closet of the apartment. Two of the passports had
   United States visas located inside them. Consular
   Affairs Database traces checks revealed that these
   United States visas are counterfeit. Also, the
   documents were missing security features normally
   incorporated in United States visas.

8. Also on September 10, 2003, REINALDO SILVA was
   interviewed following his ICE administrative arrest.
   He reported that he "used to work for a man named ABRAO
   OLIVEIRA." ABRAO OLIVEIRA is charged by complaint in
   this Court with violations of Title 18, United States

Code, sections 1028(a)(false identification documents), 1546 (visa fraud), 371 (conspiracy), and Title 8, United States Code, section 1324 (alien harboring). See <u>United States v. Eder Coelho et al.</u>, M.J. No. 03-1727-CBS. REINALDO SILVA admitted to bringing illegal aliens to OLIVEIRA, who would then assist them by placing visas in their Brazilian passports or by giving them Italian passports. REINALDO SILVA stated he also brought to OLIVEIRA individuals who desired to have their family members smuggled illegally into the United States.

9. Also on September 10, 2003, during the execution of a search warrant authorized by this Court on September 9, 2003, at Select Financial Insurance Agency, 364 Boston Post Road, Shrewsbury, Massachusetts, DSS and ICE special agents discovered a shoe box located in a filing cabinet. Inside the shoe box, the agents discovered: two United States Immigration entry stamps (one for New York and one for Miami), a Social Security Administration ("SSA") letterhead stamp for the Worcester Regional Office, an SSA review stamp for the Framingham office, and three date stamps - two of which reflected future dates of 05/07/2005 and 06/17/2005. Also, located within the shoe box were the following: a

-6-

   Nextel cellular phone bill for JOHN BROY (an alias of REINALDO SILVA), an insurance policy statement in the name of John BROY, an overdue car payment notice for John BROY, a European Community passport from Portugal, and what appears to be printed copies of pages from that passport on stock paper.

10. Also on September 10, 2003, during a custodial interview, HERACLITO J. SEGOVIA, a defendant named in a criminal complaint issued by the Court on September 9, 2003, see United States v. Neila Carneiro et al., M.J. No. 03-1725-CBS, waived his Miranda Rights and stated, among other things, that about three or four months ago, he was approached by an individual he identified as REINALDO SILVA (a/k/a JOHN BROY), who Segovia identified as a client of Select Insurance, to help out with the "production of documents" because REINALDO SILVA knew that the SEGOVIA was familiar with the process. SEGOVIA stated that REINALDO SILVA would charge an undocumented alien between $1500.00 and $2000.00 for providing the undocumented alien with either: a passport with a fraudulent United States visa; or an altered European Community passport from either Italy or Portugal (citizens of each of those countries are admitted to the United States as tourists

under a visa waiver program). SEGOVIA stated that REINALDO SILVA would assist each individual in fraudulently obtaining a Massachusetts State driver's license from the Massachusetts RMV. SEGOVIA stated that REINALDO SILVA would charge his clients $2000.00, but then he (REINALDO SILVA) would pay SEGOVIA $500.00 out of the $2000.00 for assisting with the process. SEGOVIA stated that it was REINALDO SILVA who produced the documents. During the interview, SEGOVIA repeated that REINALDO SILVA uses an alias of "JOHN BROY." SEGOVIA stated the documents were possibly produced by REINALDO SILVA at his residence at 34B Shrewsbury Green. Also, SEGOVIA stated that REINALDO SILVA would use the office computer in the Select Insurance office. Further, SEGOVIA stated that REINALDO SILVA would show up at the Select Insurance office with floppy computer diskettes (floppy computer discs), which he (REINALDO SILVA) would insert into the computer at the insurance office to produce fraudulent documents.

11. Also on September 10, 2003, during a custodial interview of NEILA CARAVALHO CARNEIRO by DSS and ICE agents, CARNEIRO stated she met REINALDO SILVA initially when she sought to obtain a false driver's license for herself. CARNEIRO stated that REINALDO

-8-

    SILVA was able to assist her with the process and provided CARNEIRO a false Portuguese passport. Further, CARNEIRO added that she provided REINALDO SILVA with passport photographs, and that REINALDO SILVA assisted her with the process of obtaining the driver's license by taking CARNEIRO to the Social Security Administration office and to the Massachusetts RMV. Further, CARNEIRO stated that REINALDO SILVA was using his personal computer at his residence and the computer located in the office of Select Financial Insurance located on Boston Turnpike Road to produce fraudulent documents.

12. Based on my experience as a special agent with DSS, including through this investigation, I am familiar with the tools, equipment and materials necessary for the manufacture of counterfeit alien registration cards, social security cards, and passports. I am aware that the common types of tools, equipment and materials used in the manufacturing of said documents include a computer, computer printer, computer document scanner, along with other items such as a typewriter, plastic laminate, a sealing mechanism, ink and ink pads, blank alien registration cards and blank social security cards.

13. For the purposes of this affidavit, the term "computer" refers to the box that houses the central processing unit ("CPU") along with any internal storage devices such as internal hard drives and internal communication devices (such as internal modems capable of sending/receiving electronic mail, or fax cards, along with any other hardware stored or housed internally. Thus, the term "computer" refers to hardware, software, and data contained in the main unit. "Information" refers to all the information on a computer, including both software and applications data.

**NECESSITY OF OFFSITE SEARCH OF COMPUTERS**

14. During the course of this and other investigations, I have consulted with computer forensic specialists within the DSS, including DSS Special Agent Kenneth Fisk. Special Agent Fisk has been a Diplomatic Security Service Special Agent for one year, and is currently assigned to the Computer Investigations and Forensics Section, located in the metropolitan Washington, DC area. As such, he has accomplished and overseen the seizures of computer systems and electronic media in support of five prior criminal investigations handled by the D.S.S, and is currently involved in the search of computers and computer

-10-

systems seized during the September 10, 2003 search at Select Financial Insurance Agency, 364 Boston Post Road, Shrewsbury, Massachusetts. Special Agent Fisk has attended the Computer Investigative Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia. This training includes instruction in searching, seizing, and analyzing data from computer systems while maintaining the integrity of the digital evidence. In addition, Special Agent Fisk has received additional in-service training in the area of computer forensics and has participated in the seizure of computers as the forensic expert in the execution of other search warrants.

15. Special Agent Fisk has informed me that to properly retrieve and analyze all electronically stored (computer) data, to document and authenticate such data, and to prevent the loss of the data either from accidental or deliberate programmed destruction, requires off-site and laboratory analysis by a qualified computer specialist. To effect such accuracy and completeness requires the seizure of all available computer equipment, the software to operate the computer system, and related instruction manuals which

contain directions concerning the operation of the computer system, and the software programs.

16. Special Agent Fisk has advised me that computer storage devices, such as hard disks, diskettes, tapes, and compact disks, can store the equivalent of thousands of pages of information. As an example, a one hundred megabyte (100MB) hard drive would have the capacity for storing approximately 50,000 pages of typewritten, double-spaced text; however, I have also been advised that the majority of computers currently sold have as a minimum, twenty gigabyte (20000MB) hard drives, or larger, with an equivalent capacity in excess of 10 billion pages of typewritten, double-spaced text.

17. Based upon Special Agent Fisk's experience, when a user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the agents conducting the search to examine all the stored data to determine which particular files are relevant and fall within the scope of the warrant. This search process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data search on-site at the local DSS Boston Field Office.

18. The analysis of electronically stored data, whether performed on-site or in a laboratory or other controlled environment, may entail any or all of several different techniques. Such techniques may include, but are not limited to, surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer capable of containing pertinent files, in order to locate the evidence, fruits and instrumentalities authorized for seizure by the warrant); "opening" or reading the first few "pages" of such files in order to determine their precise contents; "scanning" storage areas to discover and possibly recover recently deleted data; scanning storage areas for deliberately hidden files; or performing electronic "key-word" searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.
19. Special Agent Fisk has further advised me that searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment, and that data search

protocols are exacting procedures designed to protect the integrity of the evidence, and to recover even "hidden", erased, compressed, password protected, or encrypted files. Special Agent Fisk states that many commercial computer software programs also save data in unique formats which are not conducive to standard data searches. Some programs that he has encountered create temporary "print files" for the generation of hard-copy printouts, then automatically delete them after a time set by the computer user; the remaining data is then compressed into a format that is not viewable with standard utility software programs.

20. Since computer evidence is extremely vulnerable to tampering or destruction (both from external sources or from destructive codes imbedded in the system as a "booby trap"), a controlled environment is essential to a complete and accurate analysis. In order to fully retrieve data from a computer system, the analyst needs to seize all magnetic storage devices, as well as the centralized processing units (CPU's) in order to search them in a laboratory or controlled environment.

21. As illustrated at Tab 1, REINALDO SILVA consented to the seizure of the aforementioned computer and electronic media. To the extent practical, if other

persons claiming an interest in the seized computer and/or electronic media so request, I will make available to those individuals "bit by bit" or "cloned" copies of the computer's hard-drive(s) and/or electronic media within a reasonable time after the execution of the search warrant to minimize any impact that said seizures may have on their personal and/or business operations. If after inspecting the computer, including all input-output devices, system software, and instruction manuals, a computer specialist determines that these items are no longer necessary to retrieve and preserve the data evidence, I will return them as soon as practicable.

22. Based on the preceding information, I believe that probable cause exists that REINALDO SILVA did, on or about September 10, 2003, knowingly and without lawful authority, possess with intent to transfer, false identification documents in violation of Title 18, United States Code, section 1028(a); and did knowingly attempt to use, or furnish to another to use, false, forged, counterfeited, mutilated and altered passports in violation of Title 18, United States Code, section 1543; and did knowingly possess counterfeit visas and alien registration documents, knowing them to be

fraudulent, in violation of Title 18, United States Code section 1546; and, from a time unknown until September 10, 2003, did conspire with NEILA CARNEIRO, HERACLITO SEGOVIA and others, known and unknown, to commit the aforementioned criminal acts, and committed overt acts in furtherance of that conspiracy, in violation of Title 18, United States Code, section 371.

23. Based on the foregoing, I further believe that there is probable cause that residing within a Compaq computer bearing serial number MX302B2666, and electronic media, specifically two (2) compact discs ("CDs") and twelve (12) diskettes, all of which were seized during a search conducted by DSS agents at 34B Shrewsbury Green Drive, Shrewsbury, Massachusetts on September 10, 2003, digital evidence will be found in one or more computer file formats: text files, JPEG files, TIFF files, and other files, which may have been used to produce fraudulent identification documents, or otherwise

constitute the fruits, instrumentalities and evidence of crimes in violation of 18 United States Code, Sections 1028, 1543 and/or 1546.

_____
AARON J. ARNFELD
Special Agent
Diplomatic Security Service
U.S. Department of State

Sworn and subscribed to me this 17th day of September 2003.

_____
CHARLES B. SWARTWOOD, III
UNITED STATES MAGISTRATE JUDGE

-17-

# TAB 1